IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH COLTER PRITCHARD THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. | Case No. 3:24-mj-30<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Casey Uhler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  Your Affiant makes this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.  Your Affiant is a Special Agent with the Department of Justice United States Drug Enforcement Administration and has been so employed since June 2023. Your Affiant is currently assigned to the Fargo Resident Office and charged with investigating drug trafficking

and money laundering violations under Titles 18 and 21 of the United States Code. Your Affiant has received over four months of law enforcement training with an emphasis on drug trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures at the DEA Academy in Quantico, VA. Your Affiant has been involved in numerous investigations dealing with the possession, manufacture, distribution, and importation of controlled substances.

3. Prior to employment with the DEA, your affiant was employed by the Bismarck Police Department from October 2020 to June 2023. Your affiant gained experience in multiple fields of criminal investigation during his employment with the Bismarck Police Department. Your affiant conducted multiple drug interdiction investigations, narcotic search warrants, overdose investigations, and narcotic interviews while employed with the Bismarck Police Department. Your affiant completed a three-month academy with at the North Dakota Law Enforcement Training Academy from February 2021 to April 2021 and received his POST certification in the State of North Dakota.

4. Your Affiant is familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers distribute drugs, and the ways that drug traffickers use cellular telephones to facilitate their activity. Drug traffickers also use numerical codes and code words to conduct their transactions. In your Affiant's experience, drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their activities from law enforcement.

5. Your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

6. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of United States Code, Section 841(a)(1), Distribution of Controlled Substances, and United States Code, Section 846, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substance(s), have been committed by Colter PRITCHARD. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

1. In October of 2023, the Cass County Drug Task (CCDTF) Force began completing controlled purchases of cocaine from an individual who was identified as Lane Shaw. CCDTF complete three controlled purchases of cocaine from Shaw over the span of approximately 3 months.

2. On January 11th, 2024, the Drug Enforcement Administration Fargo resident office (DEA) and CCDTF arranged a controlled purchase of 1 ounce of cocaine from Shaw. CCDTF was granted a North Dakota State search warrant from a Southeast Judicial district judge for Shaw's residence, a 2017 Yukon XL Denali registered to her, her cell

phone and her person. The DEA coordinated with the North Dakota Highway Patrol to complete a traffic stop on Shaw on her way to the controlled purchase of 1 ounce of cocaine. A search of the car was completed and approximately 4 ounces of suspected cocaine was located.

3. During the traffic stop of Shaw, Shaw was mirandized and advised of the search warrant for her vehicle, residence, phone and person. Shaw then told DEA agents on scene that she had approximately 3 kilograms of cocaine in her residence.

4. On that same date, DEA and CCDTF executed the North Dakota stated residential search warrant at Shaw's residence (4398 46th Ave S, Fargo, ND). Inside of Shaw's residence, Investigators located approximately 3 kilograms of suspected cocaine (2 kilograms wrapped in duct tape in brick form and 1 kilogram in a clear plastic baggie), approximately $87,000 in US Currency, and a AR-15 style firearm.

5. DEA investigators completed an interview with Shaw at her residence. Shaw identified her source of cocaine as an individual she knew as "Colton". Shaw showed investigators "Colton's" contact in her phone in which he was labeled as "Big boy P" and the phone number was listed as 701-305-0000. Shaw stated that she received the 3 kilograms of cocaine from "Colton" on or around December 22nd, 2023 at the Biltmore Hotel in Fargo, ND. Shaw stated she paid $120,000 in cash for the 3 kilograms of cocaine.

6. Shaw stated that "Colton" was from North Dakota but currently lived in Arizona. Shaw stated that when she would contact "Colton' about ordering a shipment of cocaine, within 48 hours "Colton" would inform Shaw that her cocaine was in transit to North Dakota.

Shaw stated that "Colton" would then fly to North Dakota from Phoenix where she would meet with him at the Biltmore Hotel in Fargo to exchange the cash for the cocaine.

7. Your Affiant completed an open record search of the phone number 701-305-0000 on CashApp and identified the screen name as "Colter Pritchard" and the user name as $colterpritchard. Through law enforcement records, Your Affiant was able to observe Pritchard was originally from Langdon, North Dakota, Lived in Fargo from approximately 2015-2021 and then moved to Scottsdale, Arizona in 2021 and is currently residing in Scottsdale.

8. On 1/12/2024, Your Affiant issued administrative subpoena IM-24-099348 to Verizon Wireless in order to obtain subscriber information and phone records for 701-305-0000 from 12/12/2023 through 1/11/2024. On 1/12/2024, Verizon Wireless responded to the subpoena with the following information.

9. The Target Telephone is associated with Verizon Wireless. Subscriber information was provided as: Colter Pritchard, 1120 4th St Langdon, ND. Records indicated that the Target Telephone began service 3/9/2022. An IMEI is listed as 352130213193534and an IMSI is listed as 311480851683110. The phone is listed as an Apple iPhone 14 Pro 128 Space Black. Often drug dealers will utilize multiple phones to conduct illicit activity. Based upon my training, education, and experience in conducting narcotics investigations, Your Affiant knows it is common for drug traffickers to obtain and utilize multiple cellular phones for distributing controlled substances. Your Affiant is also aware that persons who traffic in controlled substances generally keep records, notes, receipts,

ledgers, logs of buyers and sellers, transaction amounts, and other similar documentation of their drug trafficking activity saved to their phone.

10. On 1/15/2024 Your Affiant reviewed the tolls analysis of the Target Telephone provided by the administrative subpoena return from Verizon Wireless. Through law enforcement records, Your Affiant identified one of the numbers in contact with the Target Telephone as Taylor Poss. It should be noted that Shaw stated that Poss introduced her to Pritchard and arranged for her to receive cocaine from Pritchard. CCDTF executed a narcotic search warrant at Poss's residence in Fargo in October 2023. During this search warrant, CCDTF located approximately 2 ounces of cocaine and observed what appeared to be Poss manufacturing crack cocaine in the kitchen of his residence. During this search warrant, Poss stated during an interview with investigators that he received his cocaine from Shaw. On 1/10/2024, Poss was arrested for possession with intent to deliver – cocaine and Unlawful possession of drug paraphernalia on a separate incident with Fargo Police Department. This case is still in judicial proceedings in North Dakota.

11. On 1/17/2024, Your Affiant completed an analysis of the contents of Shaw's cell phone. Your Affiant observed messages between Shaw and a contact "Big Boy P" who's phone number is saved as 701-305-0000, which was previously identified as Pritchard's cell phone number by Your Affiant. Your Affiant observed messages between Shaw and Pritchard starting on 6/24/2023 through 9/9/2023. Below is a summary of evidence

located within the cell phone downloads and is not a verbatim report of all observations made.

    a. Shaw – "Your going in my phone as Big Boy P lol"

    b. Pritchard – "If you can do 75 next week I can do 41.4k and that's everything. We each give Taylor 1k each for the commission and me and you both save money here. If you don't tell him what I just told ya."

    c. Pritchard – "Lol so I've heard. Good for you. Only reason I use Taylor is to protect my name. You keep shut about me to Taylor. I'll tell him him I'm done supplying for good. You keep on your way and just say you found a new plug. You tell me everything he says to you about our deals. Ill talk you through how to navigate that so he sells a lot for you. He was only good to me for you. He's only good to you because he sells. So he knows you have a legitimate story to take me out of it. If you trust me I'll save you 15k a month. I'll keep you in the loop. You and him sell a lot together. You're a good team, but I can't trust him. That's why I'm coming to you. I got legit business outside of this I gotta protect just like you. Fargo market is yours for the taking. 1-2 more years we both can be done. just

gotta stay humble and never trust nobody. That's why I'm talking to you. Taylor can't be in no more big deals."

d. Pritchard – "And we done talking on text. Get WhatsApp"

e. Pritchard – "I have lawyer for this. Gotta stay smart. Dear lol"

f. Shaw – "Where r u now"

g. Pritchard "Hotel. Biltmore"

12. Your Affiant also located a photograph from 12/16/2023 of a screenshot of a partial WhatsApp message between Shaw and Pritchard that stated:

a. Pritchard – "Well I won't be giving you all the savings of fronting all 3 of them on my own if that's the case. But I can still save you 7.5k in pizza savings. It will save me 8k in transportation fees, so if you want I'll split that with you. Meaning you'll be at 120k with no fronting. I'll be having to drive there with that much cash and then fly back to ND to swap with you. With that much product I make sure it gets professionally sent up here. I got a car accident with one of those smaller packages before and that was"

13. On 1/17/2024, Your Affiant and other investigators met with a confidential source. Investigators directed the confidential source to send a WhatsApp text message to contact

Pritchard aka "Big Boy P" at 701-305-0000 at 4:11 pm. Investigators observed the confidential source send a message to 701-305-0000 that stated

    a. Confidential Source - "Hey just an fyi…I haven't been dealing with Taylor at all. Hearing to much weird stuff." Due to Pritchard not responding right away, the confidential source left the meeting with investigators.

14. On 1/18/2024, at approximately 7:39 am, the confidential source sent screenshots to investigators of Pritchard's text message from 701-305-0000 that they received at 1:30 am on 1/18/2024. The WhatsApp message from Pritchard read

    a. Pritchard - "That a good or bad thing for you? But that's no good, what are you hearing now?"

15. The confidential source then replied to Pritchard's WhatsApp message from 701-305-0000 with a message that stated

    a. Confidential Source - "Well, he just crazy. I don't now what else he's on. But I can deal with his drama anymore. And now that I'm not dealing with him. Someone told me that he got arrested? I don't know if it's true but I think it's

smart to stay away from him. So I just wanted to warn you if I', not helping him. He might try to get a hold of you. And yes it's a good thing for me."

16. On 1/18/2024 at approximately 11:33 pm, the confidential source sent screenshots of WhatApps messages between them and Pritchard aka "Big Boy P" at 701-305-0000. The messages state:

    a. Confidential Source - "Im only dealing with mu big buyers that are mostly out of town. Im having out at pub west with some friends. Text u more later."

    b. Prithcard – "No worries! Stay safe and have fun!"

    c. Pritchard – "I just got a call. Taylor got caught with possession. Stay clear of him. Delete everything ya have on him and stay clear" "Yeah stay away and be careful. If he had enough on him he could try and set up and talk or some shit so just be careful"

    d. Confidential Source – "Yep. Im being uber cautious. Not dealing with anyone he did. Just saying I'm out. Lot of desperation out here. Including him. He messaged me non stop for some and I already heard so I said had nothing and my person is dry. He finally gave up."

17. Based on Your Affiant's training, education and experience, Your Affiant believes that these messages between Shaw and Pritchard are consistent with the two individuals

arranging for the distribution and transportation of cocaine to the Fargo, North Dakota area using text messages and WhatsApp for communication.

## BACKGROUND CONCERNING APPLE[1]

9. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

10. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

    a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

    c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo

Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

   d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

   e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

   f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

   g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be

purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

11. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

12. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

13. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

14. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

15.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple. Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

16.     Your affiant has reason to believe Colter PRITCHARD is involved in activity consistent with violations of United States Code Sections 841(a)(1) 846, utilizing mobile devices, to include an iPhone associated with mobile telephone number 701-305-0000 to facilitate drug transactions. In Your Affiant's training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

17.     There is probable cause to believe that the user of 701-305-0000 is utilizing the device for drug trafficking activities, evidence of which would be retained in an account associated with Colter PRITCHARD and/or 701-305-0000. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

18.     There is probable cause to believe the device, 701-305-0000 is in the possession of Colter PRITCHARD as PRITCHARD has traveled in North Dakota and Arizona. There is probable cause to show locations associated with co-conspirators. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

19.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account

16

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

20. Your Affiant knows through this investigation and others that drug traffickers will utilize electronic forms of currency exchange to further drug trafficking efforts. This includes applications such as Venmo, CashApp, Paypal and others. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

21. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

22. Based on the forgoing, Your Affiant requests that the Court issue the proposed search warrant.

23. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

24.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Casey Uhler
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on January 19, 2024

_____
Honorable Alice Senechal
UNITED STATES MAGISTRATE JUDGE